UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C18-5600-JLR-MLP <br><br> REPORT AND RECOMMENDATION |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by denying Plaintiff's request to cross-examine the State agency medical consultants; rejecting the medical opinions of examining psychologists Dr. Wheeler and Dr. Krueger; failing to identify Plaintiff's panic disorder as a severe impairment at step two; and discounting Plaintiff's testimony about the severity of her symptoms. (Dkt. # 10 at 1.) As discussed below, the Court recommends that the Commissioner's final decision be REVERSED and the case REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1982 and earned an Associate in Technical Arts degree over the course of four years. AR at 84. She has worked full-time at Wal-Mart in the past as an overnight merchandise stocker. AR at 80, 83. Plaintiff was last gainfully employed in 2010. AR at 83.

On February 5, 2015, Plaintiff applied for benefits, alleging disability as of September 29, 2014. AR at 24, 26, 237-45. Her date last insured on her Title II application was March 31, 2017. AR at 26. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. AR at 24. After the ALJ conducted a hearing on February 8, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR at 21-43.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since September 29, 2014, the alleged onset date.

Step two: Plaintiff has the following severe impairments: diabetes mellitus, asthma, affective disorder, anxiety disorder, and schizotypal personality disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work, defined as work that involves lifting and carrying 20 pounds occasionally and 10 pounds frequently and standing and/or walking for up to 6 hours in an 8-hour workday. She is unable to work in an occupation that involves fast-paced production demands, such as a rigid quota system. She cannot work in a dangerous industrial setting, performing commercial driving, or working at unprotected heights. She is unable to operate foot controls and must not be exposed to temperature or humidity extremes, due to asthma. The claimant requires a regular work schedule with a lunch period to accommodate a diabetic regimen. She is able to tolerate no more than routine, perfunctory social interactions and cannot travel to unfamiliar local places more than once in a while. She retains previously learned information but regarding learning new material, she is limited to learning simple to moderately detailed information or not more than 5-6 steps. The claimant requires a bathroom on set for use during regularly scheduled breaks. She is capable of working independently, with no more than occasional interaction with supervisors.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Step four: Plaintiff does not have past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 21-43.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-5. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*

*v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Erred by Ignoring Plaintiff's Subpoena Request

The Commissioner concedes that the ALJ committed harmful error in this case by ignoring Plaintiff's request to subpoena the non-examining State agency physicians. (Dkt. # 14 at 5.) Specifically, Plaintiff's attorney properly requested an opportunity to question non-examining reviewing physician Kristine Harrison, Psy.D. regarding her qualifications and the basis for her opinions, or in the alternative, submit interrogatories. (*Id.* (citing AR at 356-357).) Plaintiff's request was made in writing in conformance with 20 C.F.R. § 404.950 and POMS DI 29501.025. AR at 356-357. Moreover, Plaintiff's counsel reiterated the request regarding Dr. Harrison at the administrative hearing, and included non-examining State agency physician John D. Gilbert, Ph.D. in the request as well: "As a preliminary matter, we would ask that no weight be given to the opinions of Drs. Harrison and Gilbert as they are without apparent basis in the record unless they are willing to respond to the interrogatories that we provided or appear at a supplemental hearing." AR at 85-86.

The ALJ, however, failed to acknowledge Plaintiff's request in his decision, nor did he explain why he denied it without comment. The parties agree that this was harmful error. The Commissioner's Hearing, Appeals, and Litigation Law Manual (the "HALLEX")[3] 1-2-5-78 specifically states:

---

[3] The HALLEX, unlike the Code of Federal Regulations, "is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members," and, "[a]s such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Moore v. Apfel,* 216 F.3d 864, 868–69 (9th Cir.2000). Thus, the HALLEX is persuasive but not binding on this Court.

> If an ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena.

The ALJ's failure to address Plaintiff's request anywhere within the record was contrary to both Ninth Circuit case law addressing the right to due process in the social security context, as well as HALLEX 1-2-5-78. *See Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("Critical to the fair and effective operation of the [Social Security Administration's] system for distributing social security benefits based on disability is the gathering and presentation of medical evidence.").

Accordingly, this case must be remanded for further administrative proceedings. On remand, the ALJ shall consider Plaintiff's subpoena request with respect to Drs. Harrison and Gilbert consistent with HALLEX 1-2-5-78. Although the parties agree that a remand is necessary to remedy this error, they disagree regarding whether the ALJ must also reexamine the medical opinions of Kimberly Wheeler, Ph.D. and Keith Krueger, Ph.D. during the supplemental hearing. (Dkt. ## 10, 14, 15.) As discussed below, the Court finds that the ALJ should re-consider the medical opinions of not only the State agency physicians, but the examining psychologists as well.

**B.   On Remand, the ALJ Shall Reexamine the Medical Opinion Evidence**

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and

1   convincing reasons for doing so if the opinion is not contradicted by other evidence, and

2   specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).

3   "This can be done by setting out a detailed and thorough summary of the facts and conflicting

4   clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing

5   *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions.

6   "He must set forth his own interpretations and explain why they, rather than the doctors', are

7   correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions

8   must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

9         The opinions of examining physicians are to be given more weight than non-examining

10   physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the

11   uncontradicted opinions of examining physicians may not be rejected without clear and

12   convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

13   physician only by providing specific and legitimate reasons that are supported by the record.

14   *Bayliss,* 427 F.3d at 1216.

15         Opinions from non-examining medical sources are to be given less weight than treating

16   or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

17   opinions from such sources and may not simply ignore them. In other words, an ALJ must

18   evaluate the opinion of a non-examining source and explain the weight given to it. Social

19   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more

20   weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-

21   examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent

22   with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-

23   33.

> 2.  *Kimberly Wheeler, Ph.D. and Keith Krueger, Ph.D.*

Dr. Wheeler evaluated Plaintiff's mental impairments for the Washington Department of Social and Health Services ("DSHS") on March 13, 2015. AR at 434. After a clinical interview and mental status examination, Dr. Wheeler opined that Plaintiff would have marked limitations in the ability to adapt to changes in a routine work setting; ask simple questions or request assistance; communicate and perform effectively in a work setting; and complete a normal workday and workweek. *Id.* She observed that Plaintiff displayed an "unusual manner. Kept leading the interview continually offering information, offering diagnoses that she and her mom have discovered from the internet. Holds pathological view of herself as damaged, mentally ill, highly labelled, yet minimally willing to treat both her physical and mental issues." AR at 435. Dr. Wheeler observed that "minimal rapport [was] established, though became a bit animated during MSE. Will have a very hard time sustaining work relationships, as there's a brusque disconnect quite consistent with Schizoid Personality." *Id*. Dr. Wheeler noted that Plaintiff was "unlikely to get much benefit from therapy on that front, but might benefit from CBT [cognitive behavioral therapy] to build coping strategies for stress and depressed funk." *Id*. With respect to her untreated medical conditions, she noted that Plaintiff "needs to immediately pursue medical care to treat diabetes and hypothyroidism." *Id.*

On mental status examination, Dr. Wheeler observed that Plaintiff was dressed in a "tan shirt, no makeup, no particular hairstyle, no embellishment." *Id.* Her speech contained "a little bit of flatness in her tone, not the range usually found in more free conversation," and her attitude and behavior were "rigid, compliant, sort of, wants to direct how questions progress, selective about what she'll answer." *Id.* Her mood was tense, and her affect was blunted. *Id.* Her thought process and content were "organized and goal directed. Content quite matter of fact.

1  Very little in the way of dreaming, speculation." *Id*. Dr. Wheeler noted that Plaintiff declined to
2  do the concentration test and came across as resistant. AR at 436. Her orientation, perception,
3  abstract thought, fund of knowledge, and memory were within normal limits. AR at 435-36.
4  Finally, Dr. Wheeler observed that "insight is lacking. Judgment by test is thin, tends to rely on
5  others." AR at 436. Dr. Wheeler diagnosed generalized anxiety disorder with features of panic
6  and social phobia, depression not otherwise specified, rule-out Asberger's, and schizoid
7  personality disorder. AR at 433.

8        Dr. Krueger's findings following a December 2, 2015 evaluation for DSHS were
9  identical to those of Dr. Wheeler, except that Dr. Krueger additionally assessed a marked rating
10 regarding the ability to perform activities within a schedule, maintain regular attendance, and be
11 punctual within customary tolerances without special supervision. AR at 39, 554-64.[4] He noted
12 that Plaintiff performed strongly on questions dealing with abstraction and reasoning and did
13 quite well on judgment. AR at 555. However, she did poorly on the Trail Making Test,
14 performing below average. *Id*. She was far too deliberate in drawing lines, even when this was
15 pointed out to her and a different approach was suggested. *Id.* She acted resistant to suggestion.
16 *Id*. On the Personality Assessment Inventory, she provided an extremely negative self-appraisal,
17 with "numerous strong elevation that seem more colored by her pessimism than reality." *Id*. She
18 scored higher than 98% of clinical groups regarding somatoform issues, depressive thinking
19 disturbance, and generalized anxiety. *Id*. Finally, Dr. Krueger found that she was very
20 unasserted and alienated. *Id*.

---

[4] Like Dr. Wheeler, Dr. Krueger opined that Plaintiff would have marked limitations with respect to her ability to adapt to changes, communicate and perform effectively at work, and complete a normal workday and workweek without interruptions from psychologically bases symptoms. AR at 556.

REPORT AND RECOMMENDATION - 8

1     Dr. Krueger diagnosed schizoid personality disorder, noting that there could be an
2 "Autistic element, such as Asperger's aspects; but also fits Schizoid criteria." AR at 556. He
3 further diagnosed a persistent depressive disorder and unspecified anxiety disorder. *Id*. He
4 opined that therapy may help improve Plaintiff's habits and working with the Division of
5 Vocational Rehabilitation (DVR) was a possibility, "but only after her attitude changes and she
6 stops her constant self-defeating behaviors." *Id*. Finally, he noted that "[l]ots of things she is
7 doing which (sic) are complicating her depression and her social withdrawal. Stays in bed far
8 too long. No physical activity. No development of hobbies, of future goals. No attention paid to
9 lifestyle changes which could improve her diabetes." AR at 557.

10     The ALJ rejected the opinions of Dr. Wheeler and Dr. Krueger because "Dr. Wheeler
11 did not provide any explanation for her marked ratings, they appear to be based on the
12 claimant's subjective reports of reacting badly to stress, changes in routine, and social demands.
13 But as discussed above, aside from appearing tense and/or rigid on some exams, the claimant's
14 treating and examining clinicians did not observe significant anxiety in the claimant's
15 presentation." AR at 39. The ALJ rejected Dr. Wheeler's opinion that Plaintiff has marked
16 limitation in "asking simple questions or requesting assistance," as "such a rating is inconsistent
17 with Dr. Wheeler's own observations that the claimant attempted to lead the interview, offered
18 her own interpretation of symptoms, and resisted answering some questions." *Id*. The ALJ also
19 rejected Dr. Wheeler and Dr. Krueger's opinion that Plaintiff had marked limitations in her
20 ability to communicative and perform effectively in a work setting, or to complete a normal
21 work day and work week without interruptions from psychologically based symptoms, because
22 "aside from willful resistance to some questions, [Dr. Wheeler] did not state that the claimant
23 had difficulty communicating or performing on evaluation." *Id*. With respect to Dr. Krueger's

opinion regarding Plaintiff's limitations with respect to attendance and punctuality, the ALJ asserted that "any such conclusion . . . would necessarily have to be based on the claimant's subjective reports as such functioning cannot be observed or judged on a one-time evaluation." *Id*. As the ALJ found "such conclusions in this case would be based on an unreliable historian, the undersigned gives them very little weight." *Id*.

Finally, the ALJ opined that Plaintiff had not engaged in any mental health treatment at the time of Dr. Wheeler's evaluation, as she only began the process to start mental health treatment at Sea Mar that month. *Id*. The ALJ pointed out that Plaintiff had been on fluoxetine for a few weeks before Dr. Krueger's evaluation, but had not yet begun buspirone. The ALJ concluded that "medications and ongoing therapy indeed resulted in a drastic improvement in the claimant's mood, presentation, and functioning," and therefore the ALJ gave very little weight to the opinions of Dr. Wheeler and Dr. Krueger. *Id*.

As a threshold matter, the Court notes that there appear to be no other medical opinions from examining or treating sources in the record that are inconsistent with the opinions of Dr. Wheeler and Dr. Krueger. For example, their opinions appear consistent with the evaluation of treating psychologist Dr. Noor (AR at 513-15) and treating LMHC Pearson, who considered Plaintiff to be a "vulnerable adult" who would likely decompensate and become homeless if she were not supported by her mother. AR at 565. Ms. Pearson explained that individuals like the Plaintiff with schizotypal disorder are often diagnosed while attending college (or soon after graduation), but can be misdiagnosed or overlooked because they are able to present well. *Id.* Instead of giving weight to the opinions of any medical providers who have actually met the Plaintiff, the ALJ relied on the opinions of the State agency physicians whose opinions the Commissioner concedes must already be re-evaluated on remand.

The Court also finds that several of the ALJ's findings with respect to Dr. Wheeler and Dr. Krueger's evaluations are not specific, legitimate, or supported by substantial evidence. Although the ALJ claims that both examining doctors relied on Plaintiff's subjective reports of symptoms, rather than their own testing and clinical observations, both doctors discussed the results of their clinical testing at length and then explained the reasons for their conclusions. As noted above, although Dr. Wheeler observed that Plaintiff had an "unusual manner" and "[k]ept leading the interview continually offering information, offering diagnoses that she and her mom have discovered from the internet," it is apparent that Dr. Wheeler did not simply accept Plaintiff's self-diagnoses. Rather, she considered Plaintiff's behavior on mental status examination and explained how her clinical observations (including her observations of Plaintiff's communication style) supported her diagnosis of Schizoid Disorder. AR at 435. For example, she noted that Plaintiff "[h]olds pathological view of herself as damaged, mentally ill, highly labelled, yet minimally willing to treat both her physical and mental issues." *Id.*

Similarly, Dr. Wheeler observed that "minimal rapport [was] established" during the interview and MSE as a result of Plaintiff's "unusual manner" and difficulty relating to her. *Id.* She found that Plaintiff "[w]ill have a very hard time sustained work relationships, as there's a brusque disconnect quite consistent with Schizoid Personality." *Id.* Thus, this is not a case where Dr. Wheeler simply accepted Plaintiff's less than credible symptom testimony, without identifying adequate support from her own clinical interview and mental status examination. *See Ryan v. Comm'r*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinions with his own observations).

REPORT AND RECOMMENDATION - 11

Similarly, the ALJ's only statement that specifically referenced Dr. Krueger's examination was that "any conclusion that the claimant would be unable to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision or to complete a normal workday/week would necessarily have to be based on the claimant's subjective reports, as such functioning cannot be observed or judged on a one-time evaluation." AR at 39. However, the fact that Dr. Krueger is an examining rather than a treating doctor is not a specific and legitimate reason for the ALJ to reject her opinion. It is not reasonable for the ALJ to reject Dr. Krueger's opinion because he conducted a single evaluation, and then adopt the opinions of only non-examining physicians who have never even examined Plaintiff in person. The ALJ also does not acknowledge that although Plaintiff was not yet engaged in therapy at the time of Dr. Wheeler's examination, she had been engaged in at least eight months of therapy by the time of Dr. Krueger's examination. Despite her months of therapy, Dr. Krueger still assessed with the same marked limitations in functioning as Dr. Wheeler. AR at 556.

Accordingly, the ALJ is directed to conduct a de novo hearing on remand, and re-evaluate the medical opinion evidence. At step two, the ALJ should also discuss whether there is evidence in the record that Plaintiff has a panic disorder, or whether her anxiety disorder has features of panic and social phobia (as found by Dr. Wheeler) that need to be accommodated in the RFC assessment.

### C. On Remand, the ALJ Should Reevaluate Plaintiff's Testimony, RFC, and Step Five of the Sequential Evaluation Process

The Commissioner did not defend the ALJ's assessment of Plaintiff's testimony in this case, but concedes that Plaintiff's testimony must be reevaluated on remand "as necessary." (Dkt. # 14 at 12.) The Court agrees. Because this case is being remanded for reconsideration of

the medical opinion evidence, as well the consideration of Plaintiff's subpoena request consistent with HALLEX 1-2-5-78, the ALJ should re-evaluate Plaintiff's testimony and any other medical evidence submitted by the Plaintiff. The ALJ should also re-evaluate Plaintiff's RFC and proceed to step five of the sequential evaluation process with the assistance of a vocational expert, as necessary.

## V.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be REVERSED and this case REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

Dated this 8th day of April, 2019.

_MJPeterson_
MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13